**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**G.R.J.H., INC.,**

                                         **Plaintiff,**

        **v.**                                                          **07-CV-00068**
                                                                        **(NAM/RFT)**

**OXFORD HEALTH PLANS, INC.,**

                                         **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

Office of Matthew J. Sgambettera          Matthew J. Sgambettera, Esq.
323 Ushers Road
P.O. Box 1550
Clifton Park, New York 12065
_Attorney for Plaintiff_

Chorpening, Good Law Firm                 Michael J. Zaretsky, Esq.
645 Fifth Avenue                          Virginia T. Shea, Esq.
Suite 703
New York , New York 10022
_Attorneys for Defendant_

**NORMAN A. MORDUE, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.        INTRODUCTION**

        On December 5, 2006, plaintiff commenced the present action against defendant

Oxford Health Plans, Inc. ("OHP")[1] in New York State Supreme Court, County of Saratoga.

The complaint asserts causes of action for breach of contract and violations of New York

General Business Law ("GBL") § 349 against defendant.  On January 18, 2007, defendant

---

[1] In the answer, defendant asserts that plaintiff incorrectly identified defendant and that the correct name is Oxford Health Plans, LLC.

removed the action to this court on the basis that the action includes a demand for payment of

certain insurance benefits pursuant to an employee welfare benefit plan that is subject to the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

Presently before the Court is defendant's motion (Dkt. No. 21) for dismissal of the

complaint on the basis that ERISA preempts plaintiff's state law claims[2], or in the alternative,

for summary judgment pursuant to Fed. R. Civ. P. 56 based upon two theories: (1) OHP is not

a proper party to the lawsuit; and (2) plaintiff cannot prove the required elements to sustain a

cause of action for breach of contract or a violation of GBL § 349.

## II.    FACTUAL BACKGROUND[3]

In June 2006, plaintiff entered into a Group Enrollment Agreement ("Agreement") with

Oxford Health Insurance, Inc. ("OHI").  According to the Agreement, plaintiff was designated

---

[2] Defendant does not request dismissal in the notice of motion but argues for this relief in the submissions.

[3] Defendant properly filed a Statement of Material Facts pursuant to Local Rule 7.1.  Plaintiff, although represented by counsel, failed to respond to Defendant's Local Rule 7.1 Statement of Material Facts.  Local Rule 7.1(a)(3) states:

> The opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.  The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute.  <u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.</u>

Local Rule 7.1(a)(3)(emphasis in original).  As plaintiff has failed to properly respond to Defendant's Statement of Material Facts, the Statement will be accepted as true to the extent that the facts are supported by evidence in the record.  *See Orraca v. Pilatich*, 2008 WL 4443274, at *3 (N.D.N.Y. 2008); *see also N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (the Court deemed the properly supported allegations in the defendant's L.R. 7.1 Statement admitted for the purposes of the motion).

The facts set forth in this section are taken from: (1) the Complaint; (2) the Answer; (3) Defendant's Statement of Material Facts; (4) the exhibits and evidence submitted by defendant in support of their Motion for Summary Judgment; and (5) the exhibits and evidence submitted by plaintiff in Opposition to Defendant's Motion for Summary Judgment.  The facts, as discussed herein, are for the relevant time period as referenced in the complaint.

as "Group" and OHI was designated as "Us" or "We". OHP was not named in the Agreement and was not a signatory to the Agreement. On the motion, Juanita B. Luis, Associate General Counsel of United HealthCare Services, Inc. (an affiliate of OHP), provided an affidavit. Ms. Luis stated that OHI is a wholly owned subsidiary of Oxford Health Plans (NY) and an indirect subsidiary of OHP.

Under the terms of the Agreement, OHI would arrange or pay for medical and hospital services for the benefit of plaintiff's employees and their covered dependents. The relevant portions of the Agreement provided, *inter alia*, in pertinent part as follows:

VI.    PREMIUM DUE DATE AND PAYMENTS

The first day of the month is the "Premium Due Date". The Group agrees to remit to Us on or before the Premium Due Date the applicable Total Monthly Premium . . . If a Premium payment is not made in full by Group on or prior to the Premium Due Date, a 30-day Grace Period will be granted to the Group for payment without interest charge. If payment is not received by the expiration of the Grace Period, then the Agreement may be terminated by Us pursuant to Section XIII of this document.

Notwithstanding any language to the contrary in the Agreement, We will have no obligation to provide benefits or pay claims for any Member during any period for which the required Premium payment has not bee made, including during any Grace Period.

XIII.    TERMINATION

A.    The Agreement may be terminated by Us:

   (I)    Upon written notice, if any Premium payment or contribution required to be made by the Group is not received by the Premium Due Date, subject to a 30-day Grace Period.

On the motion, Daniel Fresa, a Team Leader of Small Group Collections for OHP

during the relevant time period, provided an affidavit.[4]  Mr. Fresa stated that he was fully

familiar with OHI's Enrollment Agreement with plaintiff.  According to Fresa, OHI sent two

separate Invoice Summaries ("invoices") to plaintiff for premiums due on September 1, 2006.[5]

The invoices were entitled "Oxford Health Plans Invoice Summary".  The first invoice was for

the September 2006 premium, $1,031.60, for four of plaintiff's employees, referenced as

Billing Group 2. The second invoice was in the amount of $3,310.36 which represented the

September 2006 premium and retroactive premiums from June 1, 2006 for a newly added

employee, referenced as Billing Group 3.  The invoices directed plaintiff to remit payment to

Oxford Health Plans in Newark, New Jersey with a slip entitled "Oxford Health Plans

Remittance Advice".[6]

On September 7, 2006, after the Premium Due Date but within the Grace Period, OHI

received two payments (dated September 1, 2006) from plaintiff totaling $1,859.39.  The

checks were made payable to "Oxford Health Plans".

On September 14, 2006, two separate but identical letters were sent to plaintiff to the

attention of plaintiff's employees, Alicia Metz and Lauren Simons.  The letters were sent by

---

[4] The record does not indicate what duties and responsibilities Mr. Fresa had, if any, with respect to the Agreement.  Mr. Fresa claims to be "fully familiar with this matter" but the record does not indicate whether Mr. Fresa was personally involved with any transactions or events surrounding the within action including correspondence or telephone conversations.

[5] The date that the invoices were sent to or received by plaintiff is not contained in the record.  Although Mr. Fresa stated that OHI sent the invoices to plaintiff, Mr. Fresa was not employed by OHI.  Moreover, Mr. Fresa does not claim that he sent the invoices and the record does not indicate where the invoices were mailed from.

[6] On August 31, 2006, plaintiff maintained a credit balance with OHI in the amount of $285.94, therefore, $4,056.02 was due on September 1, 2006.

"Financial Operations - Collections Department Oxford Health Plans".[7]  The letters advised

that plaintiff had an unpaid account balance of $2,196.63.  The letters indicated that, "if we do

not receive your payment by the last day of this month, your Oxford coverage will be subject

to termination effective the last day of this month".  The letters further directed plaintiff to

submit payment to Oxford Health Plans in Newark, New Jersey.

On September 15, 2006, OHI sent two invoices to plaintiff for Billing Groups 2 and 3.

The invoices were entitled "Oxford Health Plan Invoice Summary".  The invoice for Billing

Group 2 indicated a premium of $1,031.60 with the "total amount due" as $203.81.  The

invoice for Billing Group 3 indicated a premium of $827.59 with the "total amount due" as

$4,137.95.  The invoices directed plaintiff to remit payment to Oxford Health Plans in Newark,

New Jersey.

On October 2, 2006, October 6, 2006, October 10, 2006 and October 13, 2006, OHI

received payments totaling $4,055.82.[8]  The checks were made payable to Oxford Health

Plans.  The sum allegedly represented the outstanding balance from September 2006,

$2,196.63, and $1,859.19 for October's anticipated coverage.  On the motion, Lauren Simons,

the General Manager of GRJH, submitted an affidavit stating that throughout her dealings with

defendant, she received "numerous bills and corrective bills" which reflected "confusing and

mistaken billing activity generated by defendant".  Ms. Simons stated that she had several

conversations with employees of "Oxford Health" including Craig McLeoud, Claire Wilbur

---

[7] The letters were unsigned and do not contain the name of the individual(s) who generated the correspondence.

[8] Defendant alleges that four separate checks were provided, however the record only contains copies of three separate payments from plaintiff in the amount of $1,655.18, $638.10, and $1221.09.

and Betty Morgan.[9]

On October 6, 2006, a letter, entitled "Notice of Termination", was sent to Alicia Metz at GRJH.  The letter was on Oxford Health Plans letterhead and stated, "[t]his letter will serve as formal notice that Oxford Health Plans ("Oxford") has terminated your company's group insurance coverage, effective September 30, 2006 for failure to remit required premiums in accordance with the terms and conditions of your contract with us".[10]  On October 26, 2006, OHI sent plaintiff a refund in the amount of $1,859.19 which represented the premium for October 2006.

The complaint alleges that defendant wrongfully terminated the Agreement and that such termination was a breach of defendant's contract with plaintiff.  Plaintiff further alleges that defendant's wrongful termination was an improper business practice in violation of New York General Business Law § 349.  Plaintiff seeks monetary damages in an amount to be determined at trial.

## III.   DISCUSSION

### A.   Applicable Standards of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the allegations of the complaint as true, and draw all reasonable inferences in favor of the nonmoving party.  *See Grandon v. Merrill Lynch & Co.,* 147 F.3d  184, 188 (2d Cir. 1998); *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir. 1995).  In addition, the Court may not dismiss the complaint unless "it appears beyond doubt that the plaintiff can prove no set of

---

[9] The record does not contain affidavits from any of the aforementioned individuals.

[10] The record contains an unclear copy of the correspondence.  The name and title of the individual who forwarded the letter are illegible.

facts in support of his claim which would entitle him to relief." *Nettis v. Levitt,* 241 F.3d 186,

191 (2d Cir. 2001) (quotation omitted).  Therefore, the issue before the Court on such a motion

"is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims." *King v. Simpson,* 189 F.3d 284, 287 (2d Cir. 1999) (quoting

*Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995)).

      Summary judgment is appropriate where there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

Substantive law determines which facts are material; that is, which facts might affect the

outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 258 (1986).  Irrelevant or unnecessary facts do not preclude summary judgment, even

when they are in dispute.  *See id.*  The moving party bears the initial burden of establishing that

there is no genuine issue of material fact to be decided.  *See Celotex Corp v. Catrett*, 477 U.S.

317, 323 (1986).  With respect to any issue on which the moving party does not bear the

burden of proof, it may meet its burden on summary judgment by showing that there is an

absence of evidence to support the nonmoving party's case.  *See id.* at 325.  Once the movant

meets this initial burden, the nonmoving party must demonstrate that there is a genuine

unresolved issue for trial.  *See* Fed. R. Civ. P. 56(e).

      The Court applies each of the above standards to the appropriate sections of the instant

motion.

**B.**    **Motion to Dismiss**

    **A.**        **Federal Preemption**

Defendant argues that plaintiff's state law claims are preempted by ERISA and

therefore, the complaint should be dismissed in its entirety.  Plaintiff argues that the state law

claims should not be dismissed, rather, since the same facts alleged by plaintiff in support of

the state law claim support a cognizable claim under ERISA, the claims should be

recharacterized as arising under federal law.[11]

Section 514 of ERISA provides that the statute's provisions "supersede any and all

State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C.

§ 1144(a).  A law "relates to" an employee benefit plan, "in the normal sense of the word, if it

has a connection with or reference to such a plan." *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142,

146 (2d Cir. 1989).  The preemption clause is not limited to state laws specifically designed to

affect employee benefit plans.  *See Toussaint v. JJ Weiser & Co.*, 2005 WL 356834, at *12

(S.D.N.Y. 2005) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987)).  A state

law of general application, with only an indirect effect on an ERISA-governed plan, may

nevertheless be considered to "relate to" that plan for preemption purposes.  *See Smith v.*

*Dunham-Bush, Inc.*, 959 F.2d 6, 9 (2d Cir. 1992). State laws that provide an alternative cause

of action to employees to collect benefits protected by ERISA are among those laws that are

preempted.  *See Borges,* 869 F.2d at 146. ERISA's civil enforcement remedies are intended to

be exclusive remedies for enforcing rights in ERISA-governed plans. *See Pilot Life,* 481 U.S.

at 52.  Thus, "any state-law cause of action that duplicates, supplements, or supplants the

ERISA civil enforcement remedy conflicts with the clear congressional intent to make the

ERISA remedy exclusive and is therefore  pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S.

200, 209 (2004); *see also Reichelt v. Emhart Corp.*, 921 F.2d 425, 431 (2d Cir. 1990).

---

[11] Plaintiff does not dispute that ERISA governs the Agreement.

8

Accordingly, ERISA preempts state law causes of action that aim "to recover benefits due to [the plaintiff under the terms of the] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Lupo v. Human Affairs, Int'l, Inc.*, 28 F.3d 269, 272 (2d Cir. 1994).

Plaintiff initiated the complaint in state court, where they alleged breach of contract and violations of General Business Law § 349.  Federal courts have disagreed regarding whether a complaint's common law breach of contract claim should be recharacterized as a claim pursuant to ERISA § 502(a)(1)(B) or dismissed without prejudice pursuant to the preemption doctrine. *Harrison v. Metro. Life Ins. Co.*, 2006 WL 521571, at *6 (S.D.N.Y. 2006) (citing *Fanney v. Trigon Ins. Co.*, 11 F.Supp.2d 829, 832 (E.D.Va. 1998) (noting disagreement among courts regarding whether state law claim preempted by ERISA should be recharacterized as a claim pursuant to ERISA § 502(a)(1)(B)).  In *Arthurs v. Metro. Life Ins. Co.*, 760 F.Supp. 1095, 1098 (S.D.N.Y. 1991), the court concluded that where a complaint characterizes a claim as a common law breach of contract, but sets forth the elements of a claim under ERISA § 502(a)(1), the court's proper course is to recharacterize the claim as a claim under ERISA § 502(a)(1)(B) rather than to dismiss the complaint under the preemption doctrine. "[This] approach is consistent with the Second Circuit's holding that a pleading is sufficient where it sets forth the factual allegations supporting the elements of a claim, even if it fails to identify the specific law under which it brings a claim.*" Harrison,* 2006 WL 521571, at *6 (citing *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 712 n. 4 (2d Cir. 1980).

> This course of action also promotes the interests of justice and sound judicial administration. In an action commenced in state court grounded primarily on plaintiff's assertion of state law causes of action, it is to be expected that the complaint would frame its

> claims in terms designed to satisfy the pleading standards of common law causes of action, and therefore without reference to the requirements of ERISA, whether in good faith or deliberately to avert removal to federal court. To dismiss such claims outright would be wasteful and inequitable.

*Id.*

As presently plead, plaintiff's state law claims are not sufficient to state a cause of action under § 502 of ERISA. Therefore, the Court declines to "deem" plaintiff's claims as arising out of ERISA.

## 2.   Remedy

Despite the fact that plaintiff's claims are not properly plead, dismissal is not the proper remedy. Plaintiff seeks leave to amend the complaint to cure any potential pleading and jurisdictional defects. Specifically, plaintiff seeks to amend the complaint to assert ERISA claims. Since the substance of plaintiff's pleading sufficiently raises an ERISA claim, the Court will afford plaintiff an opportunity to file an amended pleading to allege claims under ERISA's specific civil enforcement provisions. *See Erickson v. Montana Electronics Co., Inc.*, 2008 WL 2079146, at *6 (D.Mont. 2008). Having removed on the basis of ERISA, defendant cannot now complain of prejudice with the Court's grant of leave for plaintiff to amend the complaint to include an ERISA claim. *See Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 269 (5th Cir. 2004). The Court will permit plaintiff to replead the claims as arising under the civil enforcement provisions of ERISA, and any remaining state law claims, which are not preempted, as supplemental state law claims. Plaintiff is also directed to include evidence to support plaintiff's standing to assert an ERISA claim in any amended pleading.[12]

---

[12] The Court notes that neither party has challenged or addressed the issue of whether or not GRJH is within an enumerated class with standing to commence an action under 29 U.S.C. § 1132. Specifically, § 1132

**C.      Summary Judgment**

      **1.      Plaintiff's First and Second Causes of Action**

As plaintiff has been granted leave to file an amended complaint, defendant's motion for summary judgment is denied as moot.

      **2.      Proper Party**

Defendant also raises an argument regarding the proper parties to the action. Defendant asserts that even assuming the Court denies dismissal based upon preemption and denies the motion for summary judgment on the substantive claims, summary judgment is still appropriate because plaintiff named the wrong party as a defendant in this matter. Defendant claims that OHP was not a signatory to the Agreement, thus defendant argues that the complaint should be dismissed as there is no relationship between OHP and plaintiff. Defendant further asserts that there is no evidence that OHP was a plan administrator or trustee. Plaintiff argues that even though OHP was not a formal signatory to the Agreement, OHP was involved in the administration and collections under the Agreement and was a third-party beneficiary of the Agreement. In the alternative, plaintiff requests leave to amend the complaint to name the correct defendant.[13]

29 U.S.C. § 1132(c) states:

> Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... may be personally liable to such participant or beneficiary . . .

---

states that, "a civil action may be brought . . . by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1009 of this title". *Riverside Holdings, Inc., v. Arkansas Best Corp.,* 1996 WL 191595, at *8 (S.D.N.Y. 1996).

    [13] Plaintiff also argues that during the Preliminary Conference, Magistrate Judge Treece ordered defendant to circulate a Stipulation to substitute the correct entity. However, there is no evidence in the record to support this contention.

In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) (citing 29 U.S.C. § 1132(d)(2)); *see also Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 509 (2d Cir. 2002) (holding that only the named plan administrator, the plan itself or its trustees may be sued for denial of benefits).  Insurance companies, even if not designated as plan administrators, could be sued in that capacity if they "actually controlled the distribution of funds and decided whether or not to grant benefits under one of the plans ...".  *Am. Med. Ass'n v. United Healthcare Corp.*, 2007 WL 1771498, at *24 (S.D.N.Y. 2007) (citing *Sheehan v. Metro. Life Ins. Co.*, 2002 WL 1424592 (S.D.N.Y. 2002)).

In this case, OHP's involvement and relationship, if any, with the Agreement and plaintiff is not clearly defined in the record.  The record does not contain any affidavit from any individual employed by OHI.  The only evidence in the record with regard to the relationship between OHP and OHI is the affidavit of Ms. Luis, who is not employed by either OHP or OHI but employed by an "affiliate of OHP".  Moreover, Ms. Luis does not purport to have any first hand knowledge of the Agreement or any of the facts surrounding the within action.  The affidavit of Mr. Fresa, an employee of OHP at the relevant time, did not offer any information with regard to OHP's duties, if any, with regard to the plan.  However, based upon the record,  it is undisputed that OHP had some involvement with the Agreement and plaintiff.  To wit, the correspondence, including the Notice of Termination, was sent to plaintiff from OHP employees on OHP letterhead.  Moreover, the invoices contained the name OHP and directed plaintiff to remit payment to OHP.  OHI is not identified in the letters or invoices.

Therefore, viewing the evidence in a light most favorable to the plaintiff, the Court finds that the record is insufficient to award summary judgment in defendant's favor on this ground.

Plaintiff seeks leave to amend the complaint to assert a claim against defendant and, "other entity(s) chargeable with administration of the Group Agreement/ERISA plan". Defendant argues that plaintiff should not be permitted "at this late juncture" to amend the complaint to reflect OHI as the proper defendant.

Generally, under Rule 15, if the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. *See United States ex rel. Maritime Admin. v. Cont'l Illinois Nat'l Bank and Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989).

As the Court has granted plaintiff leave to amend the complaint to assert a cause of action and standing under ERISA, the Court will allow plaintiff the opportunity to amend the complaint to add any additional defendants that may be proper parties to this action.

## VI.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion (Dkt. No. 21) to dismiss plaintiff's state law claims is DENIED; and it is further

**ORDERED** that defendant's motion (Dkt. No. 21) for summary judgment and dismissal of plaintiff's complaint is DENIED; and it is further

**ORDERED** that plaintiff shall file an amended complaint on or before May 31, 2009.

**IT IS SO ORDERED.**

**DATED:** May 14, 2009
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge